**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MELVIN J. COLLINS, | 3:09-cv-195-RCJ (RAM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| WES MATTICE, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's motion for a temporary restraining order. (Doc. #3.[1]) Defendants have opposed. (Doc. #13.) After a thorough review, the court recommends that the motion be denied.

## I. BACKGROUND

At all relevant times, Plaintiff Melvin Collins was in custody of the Nevada Department of Corrections (NDOC). Plaintiff is currently an inmate at the Southern Desert Correctional Center (SDCC); however, the allegations set forth in Plaintiff's complaint pertain to events taking place when he was as an inmate at the Northern Nevada Correctional Center (NNCC). (Defs.' Opp. to Pl.'s Mot. for TRO 2 (Doc. #13).) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. Plaintiff names defendants who are administrators and employees within the NDOC system. Plaintiff has filed a motion for a temporary restraining

---
[1] Refers to the court's docket number.

1

order enjoining the defendants from confining him in administrative segregation, assigning him to Unit 7B at NNCC, and harassing and intimidating him. (Pl.'s Mot. for TRO 2 ((Doc. #3)).) He claims that despite his good behavior he was improperly placed in administrative segregation for twenty-five days based on an anonymous kite. (*Id.*) After leaving administrative segregation, Plaintiff alleges he was moved to a unit that is on "lockdown for 21 to 22" hours per day. Plaintiff also claims he is being harassed and intimidated by prison officials. (*Id.*) Plaintiff requests placement in the general population with level one status while he is located at NNCC awaiting medical treatment. (*Id.* at 2-3.)

## **II. LEGAL STANDARD**

A temporary restraining order is available when the applicant may suffer irreparable injury before the court can hear the application for a preliminary injunction. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2951 (3d. 1998); *see* Fed. R. Civ. P. 65(b). Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347, n. 2 (1977); *Los Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981).

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, --- U.S. ----, ----, 128 S.Ct. 2207, 2219, 171 L.Ed.2d 1 (2008) (citations and quotation omitted). Instead, the instant motion requires the court to "balance the competing claims of injury and . . . the effect of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council*, --- U.S. ----, ----, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)). A plaintiff seeking a preliminary injunction must establish the following: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4)

advancement of the public interest. *Id.* (citations omitted).[2]

The Prison Litigation Reform Act (PLRA) imposes certain guidelines on the prospective relief to be granted to an inmate litigant in a lawsuit challenging prison conditions:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators – no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

### III. DISCUSSION

**A.    LIKELIHOOD OF SUCCESS ON THE MERITS**

Plaintiff cannot demonstrate a likelihood of success on the merits of his complaint. To justify the "extraordinary remedy" of injunctive relief, Plaintiff must demonstrate probable success on the merits of his claims. Plaintiff filed his complaint on April 14, 2009, asserting three causes of action. (Doc. #1.) In a screening order issued April 24, 2009, the court dismissed Count II with prejudice. (Doc. #4 at 5.) However, the court concluded that Plaintiff stated a colorable due process claim in Count I and a colorable Eighth Amendment claim in Count III. (*Id.* at 3-6.)

---

[2] Before *Winter*, the courts in this circuit applied an alternative, "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter,* the Supreme Court did not directly address the continued validity of the balancing approach. *See Winter*, 129 S.Ct. at 392 (Ginsburg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high . . . This Court has never rejected that formulation, and I do not believe it does so today."). This court will require Plaintiff to make a showing on all four of the traditional preliminary injunction requirements. Applying the balancing approach here would not lead to a different result, as Plaintiff has not made a strong showing on any single factor for injunctive relief. *See infra.*

3

In Count I, Plaintiff alleges that his Fourteenth Amendment right to procedural due process has been violated in connection with being placed in administrative segregation. (Pl.'s Compl. 4 (Doc. #1).) To state a cause of action for deprivation of procedural due process, a plaintiff must first establish a liberty interest for which the protection is sought. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). Liberty interests created by prison regulations are generally limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To determine whether a restraint imposes "atypical and significant hardship," a court considers a condition or a combination of conditions or factors on a case by case basis, rather than invoking a single standard. *Serrano*, 345 F.3d at 1078. Three factors guide this inquiry: "(1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Id*. (citing *Sandin*, 515 U.S. at 486-87; *Keenan v. Hall*, 84 F.3d 1083, 1089 (9th Cir. 1996))(quotations omitted). "Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Id*.

Here, Plaintiff alleges that he was locked down for nearly twenty-four hours per day while he was in administrative segregation. (Pl.'s Compl. 5.) Plaintiff claims that when he was moved from administrative segregation to Unit 7B, he remained locked down for twenty-one to twenty-two hours per day. (*Id*.) Additionally, while in Unit 7B, Plaintiff asserts that he was unable to go to church, the law library, or the gym. (*Id*. at 6-7.)

Turning to the first two factors enumerated in *Serrano*, prison officials placed Plaintiff in administrative segregation under NNCC's emergency procedure because two anonymous kites indicated that Plaintiff was in danger. (Defs.' Opp. to TRO 5, OPP 001-002.) NNCC Institutional Procedure 5.08A.2.b provides that an inmate may be placed in administrative segregation without a determination hearing if there is "reasonable cause to believe an inmate

4

is in immediate danger to themselves or to others or to the security of the institution." (Defs.' Opp. to TRO OPP 009.) Based on the two anonymous kites, reasonable cause existed to believe Plaintiff was in danger of being attacked. Additionally, inmates in administrative segregation are allowed ten hours per week of outdoor exercise, identical correspondence privileges as provided to the general population, shower and shaving at least every seventy-two hours, visitation privileges, and access to legal materials. (Defs.' Opp. to TRO OPP 011-012 (NNCC Institutional Procedure 5.08.B.1-6).) As to Unit 7B, which is described in the NNCC Institutional Procedures as a "general population transitional housing area," inmates are allowed exercise in the unit seven yard, visitation privileges, access to legal materials, and access to religious services. (*Id.* at OPP 014, OPP 023-024 (NNCC Institutional Procedure 7.13).) Although Unit 7B inmates are secured in their cells from 9 p.m. to 8 a.m. and during counts and feedings, they are not locked down for twenty-one or twenty-two hours per day as Plaintiff alleges. (*Id.* at OPP 019.) Prison officials placed Plaintiff in administrative segregation from November 3, 2006, to November 21, 2006, while investigating the threat to his safety. (Defs.' Opp. to TRO OPP 003, OPP 006.) At the conclusion of the investigation, prison officials moved Plaintiff to Unit 7B for the duration of his time at NNCC before his transfer back to SDCC. (*Id.* at OPP 006.) Turning to the third factor, Plaintiff does not allege, nor does any evidence indicate, that his placement in administrative segregation or Unit 7B affected the overall duration of his sentence. In sum, Plaintiff was placed in administrative segregation in accordance with institutional procedures, and the conditions imposed on Plaintiff in administrative segregation and Unit 7B were not so ominous as to amount to an "atypical and substantial" hardship. Thus, in Count I, Plaintiff is unable to establish an underlying substantive liberty interest for which he is seeking procedural safeguards and is consequently unable to show he is likely to succeed on the merits.

In Count III, Plaintiff alleges that his placement in administrative segregation amounts to cruel and unusual punishment in violation of the Eighth Amendment. (Pl.'s Compl. 12.) Under the Eighth Amendment, prison conditions should not "involve the wanton and

unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)). In challenging prison conditions, an inmate must show that prison officials acted with deliberate indifference to a substantial risk of harm. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)(citing *Farmer*, 511 U.S. at 835). The deliberate indifference standard consists of an objective and subjective component. *Farmer*, 511 U.S. at 843. First, "the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citations and quotations omitted). The act or omission of a prison official must "result in the denial of the minimal civilized measure of life's necessities." *Id.* (citations and quotations omitted). Second, a prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837. "Mere negligence is not sufficient to establish liability." *Frost*, 152 F.3d at 1128. Prison officials may avoid liability by: (1) proving they were unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

In this case, Plaintiff alleges that his confinement in administrative segregation and Unit 7B amounts to cruel and unusual punishment in violation of the Eighth Amendment. (Pl.'s Compl. 12.) Plaintiff points to numerous conditions that he claims are harmful, including: (1) walking on the concrete floors causes his lower back to hurt; (2) sitting for long hours on a steel bunk causes his hemorrhoids to become swollen and painful; (3) lying down for more than six to eight hours leads to stiffness in his back and neck that take hours or days to stretch out; (4) his inability to eat the high fat and high cholesterol food has caused him to lose weight; and (5) a lack of exercise and exposure to cigarettes inhibits his health. (*Id.* at 13-14.) Even if Plaintiff can show that these conditions are "sufficiently serious," he has not produced evidence to show that defendants knew of and disregarded an excessive risk to his health. In Count III Plaintiff,

6

therefore, fails to make a "clear showing" with respect to his burden of persuasion that would be consistent with a likelihood of success on the merits. *See Remlinger v. State of Nev.*, 896 F.Supp. 1012, 1015 (D. Nev. 1995).

**B.    IRREPARABLE INJURY**

Plaintiff alleges ongoing injury to his constitutional rights resulting from his confinement in Unit 7B at NNCC. (Pl.'s Mot. for TRO 2.) There is, however, no evidence demonstrating that any of the deprivations alleged in the complaint continue to occur at present. Prison officials transferred Plaintiff from NNCC to SDCC on June 16, 2009. (Defs.' Opp. to TRO OPP 007.) Thus, Plaintiff is no longer confined in Unit 7B at NNCC. Assuming the conduct alleged in the complaint was continuing, Plaintiff would suffer an irreparable injury. *See Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir.1984) (allegation of a constitutional violation satisfies the requirement that a plaintiff show irreparable harm) (citing 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2948, at 440 (1973)); *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (denial of recreational time can amount to an Eighth Amendment violation). However, in the absence of any evidence that Plaintiff's confinement in Unit 7B at NNCC is ongoing, any injury from denying relief must be correspondingly mitigated. The court finds that this factor does not favor granting Plaintiff's motion for a temporary restraining order.

**C.    REMAINING FACTORS**

As set forth above, no definite irreparable harm exists that will befall Plaintiff absent a temporary restraining order. Should this court grant the motion, however, Plaintiff would have to be placed in the general population at NNCC despite his recent transfer to SDCC. Because Plaintiff requested relief from conditions at NNCC *until* his transfer back to SDCC, relocating him back to NNCC would require an unnecessary expenditure of funds, which is not in the public interest. (Pl.'s Mot. for TRO 2.) Given that the court must accord "substantial weight" to the effects of injunctive relief on the operation of the prison, the court finds that the balance of hardships favors the defendants. *See* 18 U.S.C. § 3626(a)(2). Therefore, because none of the

factors for evaluating an injunction favor granting relief, the motion for a temporary restraining order should be denied.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for a Temporary Restraining Order (Doc. #3).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: October 16, 2009.

_____
UNITED STATES MAGISTRATE JUDGE